1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   VERNON WAYNE McNEAL,

11          Petitioner,                  No. CIV-S-02-1413 LKK KJM P

12      vs.

13   DAVID RUNNELS, Warden,

14          Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prison inmate proceeding pro se with a petition for a writ of

17   habeas corpus under 28 U.S.C. § 2254.  He challenges various jury instructions and his sentence.

18   I.  Factual And Procedural Background

19          An information filed in Sacramento County Superior Court charged petitioner

20   with robbery and alleged that he had suffered two prior "strikes" within the meaning of

21   California's Three Strikes law.  CT 7.[1]

22          The California Court of Appeal summarized the evidence presented at trial; this

23   court's reading of the transcript confirms the accuracy of the summary:

24   /////

25   _____

26      [1]  "CT" refers to the Clerk's Transcript and "RT" to the Reporter's Transcript of the state
     court proceedings, lodged with this court.

1   On March 27, 1998, Christina Fry worked at the Chevron gas
    station located at Fulton and El Camino in Sacramento.  Around
2   noon that day, she drove to the Bank of America branch in the
    Town and Country Village Shopping Center to deposit cash and
3   checks for the Chevron station.

4   Fry parked in the bank's parking lot, and walked toward the back
    [sic] entrance carrying a blue deposit bag under her arm.  She also
5   carried a purse.  Defendant came up behind her, grabbed the
    deposit bag, and quickly ran through the parking lot.  Fry, who was
6   wearing high heels, lost her balance when defendant snatched the
    bag.  After she regained her footing, she ran after defendant and
7   shouted for help.  Fry lost sight of defendant when he ran into one
    of the shopping center's hallways.
8
    Nina Melbourne was sitting in her car in the bank's parking lot
9   when she saw defendant emerge from some bushes, crouch down
    behind some parked cars, grab the deposit bag from Fry, and run
10  away.

11  At the same time, David Hames was in his car when he heard
    people yelling, "robber," and "stop him," and saw defendant run
12  past him.  Hames chased defendant in his car.  Michael Turner was
    installing a security system in the shopping center when defendant
13  ran past him.  Turner saw defendant remove his sweat shirt, stuff it
    down his pants, and attempt to hide under Turner's truck.  Turner,
14  Hames, and two bystanders assisted in restraining defendant until
    police arrived.
15
    Sacramento County Deputy Sheriff Steven Larson was dispatched to the
16  Town and Country Shopping Center.  He found defendant restrained.
    When Larson attempted to arrest defendant, he ran approximately 50 feet
17  before Larson and a bystander stopped him.  Law enforcement officers
    recovered the deposit bag containing cash and checks from defendant's
18  pants.

19  The defense argued defendant committed only the lesser-included
    offense of grand theft since he did not use force, or make any
20  physical contact with Fry when he took the deposit bag from her.

21  Answer, Ex. 3 at 2-3.

22          The court found petitioner's two prior "strikes" to be true and sentenced him to a

23  total term of thirty-five-years to life.  CT 162.

24  /////

25  /////

26  /////

2

II.  <u>AEDPA Standards</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Although "AEDPA does not require a federal habeas court to adopt any one methodology," <u>Lockyer v. Andrade</u>, 538 U.S 63, 71 (2003), there are certain principles which guide its application.

First, the "contrary to" and "unreasonable application" clauses are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u> [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).  It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law.  <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002).  It is appropriate to look to lower court decisions to

3

determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

Second, so long as the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief.  Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).  A court's "postcard" denial is a decision on the merits. Gaston v. Palmer, 387 F.3d 1004, 1013 (9th Cir. 2004).  However, when the state court does not issue a "reasoned opinion," this court must undertake an independent review of the claims. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002).

Third, in determining whether a state court decision is entitled to deference, it is not necessary for the state court to cite or even be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2003).  Moreover, a state court opinion need not contain "a formulary statement" of federal law, so long as the fair import of its conclusion is consonant with federal law.  Id.

III.  CALJIC No. 2.21.2

CALJIC No. 2.21.2 provides:

> A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars.

CT 100; RT 518.

Petitioner argues the court erred in failing to define "material part," an error which impeded the jury's ability to evaluate testimony properly by suggesting that inconsistencies on small points could undercut important testimony.  Pet. at 5.

/////

/////

The Court of Appeal rejected the argument:

> We explained in *Wade, supra* [People v. Wade, 39 Cal.App.4th 1487 (1995)] that CALJIC No. 2.21.2 uses the term "material" in its common and ordinary sense. Thus, "'[i]t is not necessary to instruct jurors on the meaning of words in common usage which are presumed to be within the understanding of a person of ordinary intelligence.'" (39 Cal.App.4th at p. 1495, citations omitted.)
>
> Defendant nevertheless insists "material" has a technical, legal definition, relying on the statement in *People v. Pierce* (1967) 66 Cal.2d 53, 61, that the test for materiality is "whether the statement could probably have influenced the outcome of the proceedings, . . ."
>
> The present case does not use "material" in the same sense it was used in *Pierce*. As stated in *Wade*, "[i]t would make no sense to tell the jury that it could distrust a false witness only if the falsity influenced the outcome of the case. Rather, as used in the instruction, 'material' carries its ordinary meaning of 'substantial, essential, relevant or pertinent.' The instruction thus tells the jury it can distrust a witness who is willfully false in giving relevant or pertinent testimony." (*Wade, supra*, 39 Cal.App.4th at p. 1496.)
>
> Because "material," as given in the instruction, is used in its common and ordinary sense, the jury did not require any further definitional instruction. There was no error.

Answer, Ex. 3 at 6-7.

Under California decisional law, a court is required "to define technical terms that have meanings peculiar to the law" for the jury. People v. Griffin, 33 Cal. 4th 1015, 1022 (2004).

> When a word or phrase is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request. A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning.

Id. at 1022-23 (internal citations and quotations omitted; emphasis in original).

In this case, the Court of Appeal found that the term "material" as used in the jury instruction does not have a technical, legal meaning, an interpretation of state law binding on this

1   court.  United States v. Colin, 314 F.3d 439, 443 (9th Cir. 2002); Mendez v. Small, 298 F.3d

2   1154, 1158 (9th Cir. 2002).

3          Petitioner suggests that the trial court's failure to define the term had an impact on

4   the jury's ability to evaluate the witnesses' varying accounts of the amount of force petitioner

5   used in removing the bank bag.  Pet. at continuation page 4.

6          In Cupp v. Naughten, 414 U.S. 141, 142, 146 (1973), the Supreme Court rejected

7   a challenge to a state instruction that told the jury that each witness was presumed to testify

8   truthfully and explained how the presumption might be overcome because it did not violate

9   "some right . . . guaranteed to the defendant by the Fourteenth Amendment."

10          Relying on Cupp, the Ninth Circuit found no constitutional problem with CALJIC

11   No. 2.20.1, which instructs a jury not to reject a child's testimony solely because of his age

12   because the instruction "merely prevents disregard of a child's testimony, but does not amplify

13   [it]."  Brodit v. Cambra, 350 F.3d 985, 990-91 (9th Cir. 2003), cert. denied sub nom. Brodit v.

14   Goughnour, __ U.S. ___, 124 S. Ct. 2888 (2004).

15          In this case, as well, the challenged portion of CALJIC No. 2.21.2 "does not

16   amplify" particular testimony or factors to be used when evaluating credibility, but suggests only

17   that the jury may choose to distrust a witness who has testified falsely in some particulars.  In

18   light of Cupp v. Naughten, this court cannot say the state Court of Appeal unreasonably applied

19   constitutional law in rejecting this challenge.

20   IV.  CALJIC No. 1.00

21          One of the first instructions given to a California jury is CALJIC No. 1.00 which

22   provides a general outline of a jury's duties.  The final paragraph reads, in pertinent part:

23   /////

24   /////

25   /////

26   /////

> You must not be influenced by pity for or prejudice against a defendant. You must not be biased against a defendant because he has been arrested for this offense, charged with a crime, or brought to trial. None of these circumstances is evidence of guilt and you must not infer or assume from any or all of them that a defendant is <u>more likely to be guilty than not guilty</u>.

CT 85; RT 510-511 (emphasis added). Petitioner argues that the portion underlined above lessens the prosecution's burden of proof because it directs the jury's attention away from whether the prosecution has proven its case beyond a reasonable doubt to the likelihood of a defendant's guilt. Pet. at 5.

The Court of Appeal rejected the argument:

> Here . . . the court told the jury that defendant's plea of not guilty placed the burden on the People to prove his guilt beyond a reasonable doubt. They were also instructed that "A defendant in a criminal action is presumed to be innocent until the contrary is proved. And in the case of a reasonable doubt, whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty." The jurors were fully and clearly instructed on the burden of proof.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> In order to prevail on a claim that the jury instructions were prejudicially misleading, defendant must show a reasonable likelihood that the jury misunderstood the instructions as a whole. Here, the jurors were instructed on the presumption of innocence. They were further advised in the language of CALJIC No. 2.90, that "*The burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crime with which he is charged.*" (Italics added.) Reasonable doubt was defined as that state of affairs in which the jurors could not say with "an abiding conviction" that the evidence supports the truth of the charge. Finally, they were told to view all the instructions "as a whole and each in light of all the others." Considering the instructions as a whole, we believe it highly unlikely the language in CALJIC No. 1.00 targeted by defendant misled the jury as to the proper standard of proof.

Answer, Ex. 3 at 4-5 (internal citations omitted).

A challenge to jury instructions does not generally state a federal constitutional claim. <u>See</u> <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). In order to warrant federal habeas relief, a challenged jury instruction cannot be merely "undesirable, erroneous, or even universally condemned, but must violate some

1   due process right guaranteed by the fourteenth amendment." Cupp, 414 U.S. at 146.  In making

2   its determination, this court must evaluate the challenged jury instructions in the context of all of

3   the jury instructions.  Id. at 144-57.

4          The "clearly established federal law" against which this claim must be measured

5   is In re Winship, 397 U.S. 358 (1970), which recognized that the due process clause requires

6   "proof beyond a reasonable doubt" of every element necessary to a finding of guilt.  A jury

7   instruction that, in context, fails to give effect to that requirement violates a defendant's

8   constitutional rights.  Bruce v. Terhune, 376 F.3d 950, 955 (9th Cir. 2004).

9          The portion of CALJIC No. 1.00 at issue here does not violate Winship's

10  teaching.  In this case, the jury was instructed that the prosecution bore the burden of proof, that

11  petitioner was presumed to be innocent unless and until the prosecution overcame that

12  presumption by proof beyond a reasonable doubt, and that all facts necessary to establish guilt

13  must be proven beyond a reasonable doubt.  CT 92, 106, 107; RT 514, 522-523.  Moreover,

14  CALJIC 1.00 does not address the prosecution's burden of proof, but rather, for the most part,

15  lists factors a jury should not consider when evaluating the evidence.  In light of these

16  considerations, the Court of Appeal did not unreasonably apply clearly established federal law in

17  upholding the instruction.

18  V.  CALJIC No. 2.90

19         Petitioner argues the giving of the California reasonable doubt instruction,

20  CALJIC No. 2.90, reduced the prosecutor's burden of proof beyond a reasonable doubt.  Pet. at

21  6.  The Court of Appeal rejected "this dog-eared argument. . . [as] conclusively settled adversely

22  to defendant's position."  Answer, Ex. 3 at 7.

23         As this instruction was upheld in Victor v. Nebraska, 511 U.S. 1, 17 (1994), the

24  state Court of Appeal's rejecting this claim is not an unreasonable application of constitutional

25  law.

26  /////

VI.  Cruel and Unusual Punishment

Petitioner also argues that his sentence of thirty-five-years to life violates the

Eighth Amendment's proscription of cruel and unusual punishment.  Pet. at 6.  The Court of

Appeal rejected the argument:

> Although the robbery did not cause any injury, the felony offense
> was still significant because of the potential danger it posed to
> public safety.  Whenever a robbery is committed on the public
> street, it is a foreseeable consequence that the victim or an innocent
> bystander will be injured.  Defendant is therefore incorrect in
> assuming that his crime was not serious merely because of the
> fortuitous happenstance that no one was seriously hurt.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Defendant fares no better under the federal standard, which asks
> whether the sentence is grossly disproportionate to the crime.
> (*Harmelin v. Michigan* (1991) 501 U.S. 957, 1001 . . . .)  In
> *Harmelin*, the United States Supreme Court found defendant's
> sentence of life without possibility of parole for possession of a
> large quantity of drugs neither cruel nor unusual.  In *Rummel v.*
> *Estelle* (1980) 445 U.S. 263 . . ., it upheld a life sentence imposed
> under a Texas recidivist statute for a defendant convicted of
> obtaining $120.75 by false pretenses after incurring previous
> convictions for fraudulent use of a credit card and passing a forged
> check. . . . "California appellate courts have adopted the reasoning
> of *Rummell* [sic] . . . in upholding life sentences for third strike
> offenders."  (*Martinez*, *supra*, 71 Cal.App.4th at p. 1511, and see
> pp. 1505-1507 [25 years to life for possession of methamphetamine
> and attempting to deter a peace office [sic], with prior convictions
> for assault with a deadly weapon, robbery and attempted robbery].)
>
> We conclude defendant's sentence did not violate state or federal
> prohibitions on cruel or unusual punishment.

Answer, Ex. 3 at 8, 10-11.

In Lockyer v. Andrade, 538 U.S. 63 (2003) and Ewing v. California, 538 U.S. 11

(2003), the Supreme Court considered California's Three Strikes law.  In Ewing, a direct appeal

from a judgment of conviction, the Supreme Court recognized the longstanding "tradition of

deferring to state legislatures in making and implementing" policy decisions about sentencing

laws.  538 U.S. at 24.  And while the Court also recognized a "narrow proportionality principle,"

1 it held the Eighth Amendment "does not require strict proportionality between crime and

2 sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the

3 crime." <u>Id</u>. at 23 (internal quotations omitted).

4      The Court did not find Ewing's sentence of twenty-five-years-to-life to meet the

5 standard of gross disproportionality. His commitment offense—grand theft—was based on his

6 appropriation of $1,200.00 worth of merchandise from a golf pro shop. It was committed while

7 he was on parole from a sentence for burglary and robbery. <u>Id</u>. at 20, 28. His record included

8 "numerous misdemeanor and felony offenses," most of them committed while on probation or

9 parole, and nine prison terms. <u>Id</u>. at 30. The Court concluded: "To be sure, Ewing's sentence is

10 a long one. But it reflects a rational legislative judgment, entitled to deference, that offenders

11 who have committed serious or violent felonies and who continue to commit felonies must be

12 incapacitated." <u>Id</u>.

13      <u>Lockyer</u> addressed the interaction of the AEDPA and the Court's Eighth

14 Amendment jurisprudence. As in <u>Ewing</u>, the Court recognized the lack of clarity in its earlier

15 Eighth Amendment cases but described the "governing legal principle" in Eighth Amendment

16 cases to be "gross disproportionality." <u>Lockyer</u>, 538 U.S. at 72. The Court ultimately found the

17 California Court of Appeal had not applied federal law in an unreasonable fashion or reached a

18 result contrary to federal precedent on indistinguishable facts. <u>Id</u>. at 74. As a result, it upheld

19 Andrade's sentence of fifty-years-to-life following his convictions for two counts of grand theft

20 stemming from two incidents of shoplifting and the findings he had suffered three prior

21 convictions for residential burglary. <u>Id</u>. at 65. His record also included two federal drug

22 convictions, a federal escape charge, and some misdemeanor thefts. <u>Id</u>. at 66-67.

23      In light of <u>Lockyer</u> and <u>Ewing</u>, whether the state Court of Appeal's determination

24 was an unreasonable application of clearly established federal law depends on the severity of the

25 offense, the availability of parole and length of sentence, and the impact of recidivism. <u>Id</u>. at 72.

26      The instant offense is a robbery, which requires a finding that the taking was

accomplished by force or fear.  This does not require "a physical corporeal assault."  <u>People v. Mungia</u>, 234 Cal. App. 3d 1703, 1708 (4th Dist. 1992); Cal. Pen. Code § 211.  Fry's loss of her balance when petitioner wrested the bag from under her arm, and petitioner's struggle with the citizens who pursued and apprehended him, satisfy the force element for robbery, but the minimal nature of the force does suggest that the gravity of the offense was not as great as other crimes involving force or violence.  <u>See</u> <u>Reyes v. Brown</u>, 399 F.3d 964, 969 (9th Cir. 2005).

Petitioner's sentence consists of a term of twenty-five-years-to-life for the robbery plus an additional ten years for his prior convictions, which also were charged and proven as the strikes.  Petitioner will not be eligible for parole for over twenty-five years.[2]  <u>Contra</u> <u>Rummel v. Estelle</u>, 445 U.S. 263, 280 (1980) (life sentence for small theft ameliorated by Texas policy of liberal grant of good time that might make person eligible for parole in twelve years).  Nevertheless, the severity of the sentence alone will not make it grossly disproportionate.  <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991) (sentence of life without the possibility of parole for possession of large amount of drugs did not violate Eighth Amendment).

Finally, there is the impact of petitioner's recidivism and the severity of petitioner's prior crimes.  <u>See</u> <u>Ramirez v. Castro</u>, 365 F.3d 755, 769 (9th Cir. 2004).  Petitioner's prior "strike" offenses are a 1983 assault with the intent to commit rape and a 1985 robbery.  CT 7-8.  The probation report described the circumstance of these offenses:

/////

/////

/////

/////

/////

/////

---

[2]  A third striker is not permitted to earn custody credits against his minimum sentence.  <u>In re Cervera</u>, 24 Cal. 4th 1073 (2001).

1

2

3

4

5

6

7
     On 7/9/83, the victim, who was known to the defendant, and the defendant met at the Regional Transit bus shelter near Goethe Road and Branch Center.  While in the bus shelter, the defendant attempted to forcibly remove the victim's shorts.  The defendant stopped his actions and he and the victim began walking down Goethe Road.  The defendant grabbed the victim from behind and pulled her into a parking lot.  The defendant removed a knife from his sock, threatened the victim, and told her to remove her shorts.  When the victim did not remove her shorts, the defendant pulled the shorts off and then told the victim to "spread your legs."  At that point, a witness vocally identified himself and the defendant left the scene.

8   CT 138-139.  Petitioner was put on probation, but eventually was sent to prison when his

9   probation was revoked after he was convicted of robbery.  Id.

10

11

12

13
     1/24/85 . . . The victim returned home and found the defendant inside her residence burglarizing it.  The defendant, who was armed with a handgun, struck the victim on the head several times with the butt of the weapon before fleeing with the victim's property.  When taken into custody, the defendant initially pointed his weapon at the officers, but put the weapon down when ordered to do so.

14   CT 139.  Petitioner was sent to prison for this offense.  Id.

15        In addition to the two strikes, petitioner has the following additional convictions:

16       • a 1990 possession of marijuana for sale, which resulted in a sixteen month prison sentence;

17

18       • a 1993 possession of cocaine base, which resulted in a sixteen month prison sentence;

19       • a 1996 misdemeanor disturbing the peace, which resulted in a sixty day jail sentence;

20

21       • a 1997 misdemeanor resisting arrest, which resulted in a thirty day jail sentence and three years informal probation.

22   CT 139-141.  The probation report also noted that petitioner was involved in three major and ten

23   minor incidents in the jail while awaiting trial.  CT 144.

24   /////

25   /////

26   /////

1        The Supreme Court has said:

2            One in [defendant's] position has been both graphically informed
             of the consequences of lawlessness and given an opportunity to
3            reform, all to no avail. Article 63 [the Texas recidivist statute] thus
             is nothing more than a societal decision that when such a person
4            commits yet another felony, he should be subjected to the
             admittedly serious penalty of incarceration for life, subject only to
5            the State's judgment as to whether to grant him parole.

6  Rummel v. Estelle, 445 U.S. at 278.  Petitioner, too, has been "informed of the consequences of

7  lawlessness," but, in his words, "it clicked in my mind, it's money in the bag, and I just took it."

8  RT 440.  This case does not raise a presumption of gross disproportionality.  See Rios v. Garcia,

9  390 F.3d. 1082, 1086 (9th Cir. 2004); compare Ramirez v. Castro, 365 F.3d 768 ("three strikes"

10 sentence grossly disproportionate to the underlying petty theft with a prior theft when priors had

11 been shoplifting incidents in which defendant pushed a security guard and a confederate drove

12 over the foot of a different security guard and defendant had served no time in prison).

13        Whether this court would have imposed the same sentence is not the inquiry: in

14 light of clearly established Supreme Court authority, this court cannot say the state Court of

15 Appeal erred.

16        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

17 writ of habeas corpus be denied.

18 /////

19 /////

20 /////

21 /////

22 /////

23 /////

24 /////

25 /////

26 /////

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within ten days after service of the objections.  The parties are advised

7  that failure to file objections within the specified time may waive the right to appeal the District

8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED:  June 7, 2005.

11    _____

12    UNITED STATES MAGISTRATE JUDGE

16  2/mcne1413.157